UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARY LEE PAGLIAROLI, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 17-CV-1350-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Mary Lee Pagliaroli ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. Plaintiff also filed a response to the Commissioner's brief. *See* ECF No. 14. For the reasons that follow, the Commissioner's motion (ECF No. 11) is **GRANTED**, and Plaintiff's motion (ECF No. 8) is **DENIED**.

## BACKGROUND

On May 22, 2014, Plaintiff filed her DIB application, alleging she was disabled due to mental health, stress, anxiety, migraines, and restless leg syndrome. Transcript ("Tr.") 146-49, 171. Plaintiff's application was denied, and she subsequently requested a hearing. Tr. 93-100. Plaintiff's hearing was held before Administrative Law Judge Roxanne Fuller (the "ALJ") on April 19, 2016. Tr. 46-78. A vocational expert ("VE"), Tom Grisak, also testified at Plaintiff's hearing. Tr. 75. The ALJ issued her decision on September 8, 2016, denying Plaintiff's application. Tr. 23-

43. On November 2, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

At the time of her hearing, Plaintiff was 47 years old and had a college degree in communications. Tr. 50. Her last job, as a billing clerk in a hospital, ended in March 2014. Tr. 51. Plaintiff alleges she stopped working due to increasingly frequent headaches, migraines, restless leg, and panic attacks. ECF No. 8 at 3. Plaintiff alleges she missed work 1-2 days a month in 2014, due to migraine headaches, and estimated she missed work about four days a month from her combined impairments. Tr. 54, 199. According to Plaintiff, "[her] migraines drastically improved since she stopped working." *Id.* Her restless leg also improved due to 'the absence of work stress, and when she spent less time sitting in a chair." *Id*. (citing Tr. 560).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. In the first two steps of the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity during the relevant period, and that she had the following severe impairments: osteoarthritis of the left knee, morbid obesity,[1] post-traumatic stress disorder, major depressive disorder, and generalized anxiety disorder. Tr. 28. The ALJ next found that Plaintiff did not meet or medically equal any listed impairment at step three. Tr. 29. The ALJ determined Plaintiff had the residual functional capacity ("RFC") for a limited range of unskilled, low-stress, sedentary work, finding she:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, crouch, kneel, and crawl; have occasional exposure to moving mechanical parts; occasionally operate a motor vehicle; have occasional exposure to unprotected heights; is able to perform simple, routine, repetitive tasks; is able to work in a low stress job, defined as requiring only occasional decision making and only occasional changes in the work setting; have no interaction with the public; and only occasional, superficial interaction with co-workers and supervisors.

Tr. 32. Based on the RFC and the testimony of the VE, the ALJ determined Plaintiff could no longer perform her past relevant work at step four. Tr. 37. However, based on the VE's testimony, the ALJ determined that Plaintiff retained the ability to perform other work found in significant numbers in the national economy, such as a final assembler, polisher, and stuffer. Tr. 38.

---

[1] At the time of the hearing, Plaintiff was 5'5" tall and weighed 340 pounds. ECF No. 8 at 3.

4

## II. Analysis

Plaintiff asserts two points of error in the ALJ's decision. Plaintiff contends: (1) the ALJ failed to properly assess and weigh the opinions of Plaintiff's treating physicians; and (2) the ALJ erred in evaluating the opinion of the Administration's consultative psychologist, Dr. Ippolito, with respect to Plaintiff's mental capabilities. The Court addresses these arguments in turn below.

### A. Substantial Evidence Supports the ALJ's Analysis of Dr. Phillips's Opinion.

Plaintiff argues the ALJ should have assigned controlling weight to the medical opinion form completed by Dr. Phillips, her treating psychiatrist. Tr. 651-56. *See* 20 C.F.R. § 404.1527(d)(2) (treating physician's opinion is given controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."). For the reasons set forth below, the Court finds the ALJ's analysis was well reasoned and supported by substantial evidence, and the form was not entitled to controlling weight.

First, the ALJ pointed out that Dr. Phillips' suggested limitations conflicted with Plaintiff's daily activities. As the ALJ explained, Dr. Phillips' opinion portrayed Plaintiff as having little ability to perform simple tasks or to get along with others, yet her daily activities included tasks that required memory, concentration, and social interaction. For example, Plaintiff's daily activities included cooking, shopping, painting, operating a motor vehicle, leaving her home unaccompanied, attending church, and helping in the food pantry. Tr. 30, 33, 36. Plaintiff also told Dr. Miller she cooked, cleaned, and shopped once or twice per week; and she told Dr. Ippolito that she drove, interacted with friends, checked email, and cleaned. Tr. 431, 438. At her hearing, Plaintiff said she tended to hide from others, but she also admitted that she left her home four to five times per week; that she could drive; and she helped out in her church's food pantry. Tr. 63, 66-67, 74.

5

Next, the ALJ cited examples where Plaintiff's mental status examinations from physicians revealed little restriction in Plaintiff's attention, concentration, or memory. Tr. 36. In fact, the ALJ cited Dr. Phillips' own treatment note from May 2014 (Tr. 36), in which Dr. Phillips noted that Plaintiff had normal memory and her attention span and concentration were "improving." Tr. 352. There were no objective findings in the record to support the "serious limitations" in concentration and memory Dr. Phillips checked on the medical treatment opinion form. Tr. 653. Dr. Ippolito, the consulting psychologist, likewise reported intact memory, concentration, and cognitive functioning. Tr. 437. Finally, the ALJ cited a report from neurologist Dr. Ajtai, who also observed completely normal mental status, including memory, cognition, and fund of knowledge. Tr. 605. In other words, the ALJ found that important mental status factors such as concentration, memory, and social interaction were all completely normal. When mental clinical findings are "largely normal," the ALJ is entitled to reject a contradictory medical opinion that is ostensibly based on those clinical findings. *See, e.g., Newell v. Colvin*, No. 15-CV-6262P, 2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016), *reconsideration denied*, No. 15-CV-6262P, 2017 WL 1541239 (W.D.N.Y. Apr. 28, 2017) (ALJ properly discredited opinion based upon the "largely normal" findings from the claimant's mental-status examinations); *Downs v. Colvin*, No. 6:15-CV-06644(MAT), 2016 WL 5348755, at *4 (W.D.N.Y. Sept. 26, 2016).

Plaintiff also contends the ALJ overlooked Dr. Phillips' status as a treating physician and the fact that she was a specialist. *See* ECF No. 8 at 25. Plaintiff acknowledges the ALJ addressed the opinion, but she says the ALJ's analysis was vague and legally insufficient. ECF No. 8 at 24-27. Contrary to Plaintiff's argument, the ALJ clearly explained her reasons for giving less than controlling weight to Dr. Phillips' opinion that Plaintiff had "serious limitations" in concentration and memory. Tr. 653. Furthermore, the ALJ recognized Dr. Phillips as a "treating doctor," which showed the ALJ understood Dr. Phillips' opinion would be due controlling weight if it were well

supported and consistent with the record. Tr. 36. However, the ALJ is clearly entitled to reject medical opinion evidence that is not well-supported or is inconsistent with other evidence in the record. *See Morris v. Berryhill*, No. 16-2672, 2018 WL 459678 at *3 (2d Cir. 2018) ("opinion of a treating physician is not absolute").

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (finding that "a slavish recitation of each and every factor" listed in 20 C.F.R. § 404.1527(c) is not required).

At the hearing, the ALJ asked Plaintiff whether Dr. Phillips is a psychiatrist, to which Plaintiff answered in the affirmative. Tr. 55. Plaintiff also testified that she treated with Dr. Phillips for six to eight months. *Id*. Although the ALJ did not directly address Dr. Phillips' specialty in her opinion, she was not required to do so. Specialty is not a determinative factor in this particular case, since the ALJ can reject a specialist opinion, when, as here, it conflicts with other evidence in the record. As explained, once the ALJ has cited a good reason for rejecting an opinion, there is no requirement to discuss factors that are not outcome determinative. *See Atwater*, 512 F. App'x at 70; *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (substantial evidence supported rejection of insufficiently supported treating opinion). To require the ALJ to mention the specialty

7

and length of treatment in her decision under the facts of this case is unwarranted, and such a requirement would exalt form over substance. *See Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004) (affirming ALJ opinion which did not discuss the treating physician rule, but where the decision adhered to "the substance of the treating physician rule").

Plaintiff also complains the analysis did not address some of the limitations listed on Dr. Phillips's form. *See* ECF No. 8 at 26. To the contrary, the ALJ carefully recounted each of Dr. Phillips' suggested limitations, including the social and attendance restrictions Plaintiff cites in her brief. The ALJ also noted Dr. Phillips' opinion suggested "serious limitations in many categories of mental functioning." Tr. 36. As explained above, however, the ALJ also cited clinical evidence showing Plaintiff's mental status examinations were largely normal, and that she engaged in daily activities inconsistent with disability. Thus, the ALJ explained her reasoning for rejecting Dr. Phillips' form to the extent it conflicted with evidence showing Plaintiff's ability to perform simple, isolated, low-stress work of the type described by the RFC. Tr. 36. And to the extent Plaintiff argues the three treatment notes from three different physician cited by the ALJ did not "address or contradict" Dr. Phillips's form (*see* ECF No. 8 at 27), Plaintiff failed to explain the point of her argument. The ALJ clearly addressed these notes—all of which reported normal mental status—and pointed out their contradiction with Dr. Phillips' form stating "serious limitations" in concentration and memory. Plaintiff's argument is, therefore, without merit.

Moreover, the "fill-in-the-box" form which seems to be the buttress of Plaintiff's first point of error has little evidentiary value. *Gray v. Astrue*, No. 9-cv-00584, 2001 WL 2516496, at *5 (W.D.N.Y. June 23, 2011). The form contains over 50 boxes for the respondent to check. Dr. Phillips checked four. In the "Mental Abilities and Aptitudes to do Unskilled Work" portion of the form, Dr. Phillips checked that Plaintiff would be unable to meet competitive standards in three fields. Tr. 653. When asked to explain the limitations, Dr. Phillips merely states "see notes." *Id*.

8

Throughout Dr. Phillips' notes Plaintiff is noted to display anxiety at times but is able to control it, or she is noted to display anxiety and depression only periodically. Tr. 310-30, 639. As the notes consistently reflect, Plaintiff's speech is noted as clear, fluent and spontaneous and her immediate, recent and remote memory are intact. Tr. 310, 639. Thus, there is little in Dr. Phillips' notes connecting the checked boxes on the form with Plaintiff's psychiatric exam. There were no explanatory notes which fill in the margins or separate notes expounding on the answers given. Nor does the form contain any completed fields which provide objective findings for the assessments. *See Harbot v. Berryhill*, 335 F. Supp. 3d 382 (W.D.N.Y. 2018) (finding the ALJ improperly discounted the opinion on a fill-in-the-box form where "the margins of the form were filled with hand-written notes" and "accompanied by a multi-page, single-spaced typewritten supplemental attachment which explained the clinical bases for the limitations it described"); *McGuire v. Comm'r of Soc. Sec.*, No. 17-CV-6687-JWF, 2019 WL 1172809, at *1 (W.D.N.Y. Mar. 13, 2019) (finding that a fill-in-the-box form supplemented by written narrative, including symptoms, diagnosis, prognosis, description of pain, description of clinical findings and objective signs, and treatment and response, was reliable). As noted above, Dr. Phillips checked boxes on the form but provided no additional narrative or other supplementation to support her conclusion.

Plaintiff was also seeing a therapist, Annie Hanley ("Ms. Hanley"), during the time she saw Dr. Phillips. The notes of those visits most often record logical thought content and intact thought process. Tr. 441-514. Although on a few occasions, depression and anxiety were noted as moderate to severe, they were, for the most part, noted as moderate. Tr. 441-514. Additionally, Ms. Hanley observed that Plaintiff reported feeling better when her fears and feelings were validated, for example when her psychiatrist told Plaintiff she would be fired and that she "definitely" would be approved for disability. Tr. 463, 467. As noted, most of Plaintiff's stress related to her supervisor, and once Plaintiff was removed from her job situation and the supervisor,

her previous problems with headaches and restless leg syndrome appeared to have improved significantly. Tr. 658.

Plaintiff's argument that the ALJ overlooked the GAF score ratings from Dr. Phillips' treatment notes also fails. *See* ECF No. 8. at 26. Contrary to Plaintiff's argument, the ALJ explicitly discussed the scores (Tr. 36, 311) and was careful to explain that she assigned little weight to the scores generally, because they were snapshots of Plaintiff's condition at a particular time, and because the scores are designed to consider factors outside those used in disability determinations. Tr. 36. *See Wilson v. Berryhill*, No. 16-CV-00664V(F), 2018 WL 4211322, at *2 (W.D.N.Y. Sept. 4, 2018) (noting the GAF is a "multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information").

Furthermore, the recent edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders has dropped the use of the scale, and the Social Security Administration has limited the manner in which such scores are used. *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (explaining that the Administration issued a bulletin dated July 31, 2013, limiting use of GAF scores because the scores are so general that they are not useful without additional supporting description and detail) (internal citations and quotations omitted). Dr. Phillips consistently assigned a GAF score of 50 during the treatment period of March 2014 to June 2014. *See, e.g.*, Tr. 311, 314, 317, 320, 323, 326. However, after Plaintiff was hospitalized for three days in May 2014, she was assigned a GAF score of 65 (Tr. 298), and Dr. Young reported her average GAF score for the treatment period of March 2014 to February 2016 was 60 (Tr. 779-82). A GAF score in the 51 to 60 range indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Zabala v. Astrue*, 595 F.3d 402, 406 n.3 (2d Cir. 2010) (internal citations omitted). A GAF score in the 61-70 range indicates some mild limitations or some difficulty in occupational settings, but also indicates

general functioning and the existence of some meaningful personal relationships. *See Petrie v. Astrue*, 412 Fed. App'x 401, 405 (2d Cir. 2011). Thus, even if the scores were considered, they indicate, for the most part, that Plaintiff had only mild to moderate limitations. In any event, however, for the reasons explained above. the ALJ properly assigned little weight to Plaintiff's GAF scores and explained her reasons for doing so.

In summary, the ALJ explained that although Dr. Phillips had suggested a greater level of limitation, Dr. Phillips' opinion was not consistent with Plaintiff's daily activities and with her generally normal mental status examinations since she left her last job. Because it is the ALJ's duty to evaluate conflicts in the evidence, the Court finds the ALJ acted within her discretion in discounting Dr. Phillips' opinion regarding Plaintiff's mental limitations, and the Court finds no error. *See* 20 C.F.R. § 404.1527(c)(i); *Monroe*, 676 F. App'x at 7 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Where, as here, the ALJ considered the record as a whole, including the assessments of all the medical providers, and cited good reasons supported by substantial evidence for her conclusions, there is no error and the ALJ's decision should be affirmed.

**B. Substantial Evidence Supports the ALJ's Analysis of Dr. Ippolito's Opinion.**

Plaintiff also argues that substantial evidence did not support the ALJ's decision to afford partial weight to the opinion of consultative examiner Dr. Ippolito. Tr. 35, 435-38; ECF No. 8 at 29. In her first argument, Plaintiff contends that a consultative physician can never be assigned more weight than a treating doctor. ECF No. 8 at 29. Plaintiff's argument is incorrect. The ALJ is permitted to assign significant weight to any opinion she finds well supported and consistent with the other evidence in the record. *See Petrie*, 412 Fed. App'x at 405 (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); 20 C.F.R. § 404.1527(c).

In this case, Dr. Ippolito's examination notes explained and supported her conclusions. Plaintiff told Dr. Ippolito she had friends with whom she interacted on a regular basis, and she was "able to do cooking, cleaning, and grocery shopping independently." Tr. 437-38. Plaintiff also said her typical day was spent checking her email, participating in hobbies like painting and crafting, cleaning, or lying in bed. Tr. 438. Additionally, Dr. Ippolito's own clinical testing revealed that Plaintiff had normal memory and concentration. Tr. 437. Because Dr. Ippolito's opinion was well supported and explained, the ALJ was entitled to afford it at least partial weight.

To the extent Plaintiff argues that the ALJ erred in rejecting the portion of Dr. Ippolito's opinion regarding "moderate to marked" restriction in Plaintiff's ability to handle interpersonal relationships and work stress (*see* ECF No. 8 at 29), Plaintiff's argument takes the ALJ's statements out of context. The ALJ specifically recognized Dr. Ippolito's opinion regarding interaction and stress and explained that Plaintiff would struggle to handle more than moderate stress, and that she did not work well with others,. Tr. 35. Thus, the ALJ determined an RFC limiting Plaintiff to simple/routine/repetitive tasks, limited her interaction with the public and colleagues, and specified that Plaintiff needed a "low stress" job. Tr. 32. As long as the ALJ is careful to explain her decision, she is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions"). Here, the ALJ explained that Plaintiff's many activities outside her home and her long work history suggested she at least retained the ability to perform the types of unskilled, low-stress work described by the RFC, notwithstanding Dr. Ippolito's opinion. Tr. 35.

Plaintiff also challenges the ALJ's finding regarding social interaction, relying primarily on notes from Ms. Hanley. *See* ECF No. 8 at 30; Tr. 61-62, 438, 509, 513, 662, 673, 682, 707-77.

12

Plaintiff consistently complained to Ms. Hanley that she felt isolated and inactive. However, as already discussed, Plaintiff said she left her home up to five times per week, that she spent time with friends and at her church food pantry, and that she could go out alone. Tr. 437-38. Thus, the record establishes a conflict between Plaintiff's complaints to Ms. Hanley and the many activities in which she admitted participating. When, as here, there is a genuine conflict in the evidence, the Court must affirm the ALJ's resolution of that conflict, as long as the resolution is well explained—which the ALJ did in this case. *Raymer*, 2015 WL 5032669, at *5.

Plaintiff also asserts that the record "documents multiple instances of [her] inappropriate reactions to stress." ECF No. 8 at 30. In support, Plaintiff cites a treatment record where she was anxious about returning to the job that had caused her decompensation. *Id.*; Tr. 457. However, the ALJ acknowledged that Plaintiff cannot return to her last job; thus, the cited treatment note is not relevant to Plaintiff's argument. Plaintiff also cites a lengthy section of Ms. Hanley's notes (Tr. 707-77), mostly documenting Plaintiff's feelings about her ups and downs, her lack of motivation, and her worries about returning to work, as well as her grinding her teeth and sleeping too much. However, nothing in these notes directly addresses Plaintiff's reactions to stress or stressors in a work-like setting (Tr. 710, 714, 718, 724, 726, 736, 748, 762, 770, 776), and Plaintiff does not point to any specific treatment note supporting her position that the ALJ's finding regarding social interaction was not supported by the evidence.

Because the ALJ's decision reflects that she explained her rationale for the weight assigned Dr. Ippolito's opinion. the Court finds the ALJ's choices were well within her "zone of choice" and should be affirmed. *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir.2007) (holding that the "ALJ acted within the acceptable zone of choice in declining to give [the treating physician's] opinion controlling weight). A thorough review of the records reflects that Plaintiff's stress onset was primarily

limited to interaction with her supervisor. The records also note she was doing much better after leaving her stressful situation. The ALJ's compassionate and careful assessment took this into account in determining that there were jobs in the national economy Plaintiff could perform and, accordingly, was not disabled under the Act.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED** and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE